**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HELEN A. H. M.,**

                **Plaintiff,**

**v.**                                         **5:22-CV-00558 (TJM)**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**
_____

**Thomas J. McAvoy**
**Sr. U.S. District Judge**

### DECISION AND ORDER

Plaintiff Helen A. H. M. ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI") benefits.  Generally, Plaintiff alleges that the Administrative Law Judge's ("ALJ") decision denying her application was unsupported by substantial evidence and contrary to the applicable legal standards.  Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

## I.  BACKGROUND

On May 26, 2022, Plaintiff commenced this action to appeal the Commissioner's denial of her SSI claim.  dkt. # 1.  Plaintiff filed her initial claim application on January 28, 2020, alleging disability beginning January 1, 2013.  See dkt. # 11, Social Security Administrative Record ("R") at 10.  After the initial denial, Plaintiff obtained a

representative and submitted an appeal before an ALJ.  Id.  Following a hearing, the ALJ denied Plaintiff's claim in a written decision.  Id.  On appeal, the Social Security Appeals Council affirmed the ALJ's decision.  Id. at 1–5.

Shortly after Plaintiff commenced the instant action, the Court received the complete administrative record.  See dkt. # 11. Plaintiff's attorney has filed a brief in support of her appeal, and the Commissioner filed a brief in opposition.  See dkt. #s 12, 14.  Plaintiff has also filed a reply brief.  See dkt. # 15.  The matter is now before the Court.

## II.   FACTS

The Court will assume the parties' familiarity with the facts and will discuss only the matters relevant to the decision below.

## III.   ADMINISTRATIVE LAW JUDGE'S DECISION

In a written opinion dated August 11, 2021, Administrative Law Judge Jeremy G. Eldred concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  R. at 7–25.  The ALJ applied the five-step sequential evaluation process set forth in 20 CFR § 4040.1520(a).  The five steps are discussed below in seriatim.

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 28, 2020, which was the application date.  R. at 12.

At Step Two, the ALJ found that Plaintiff has multiple "severe" impairments, including "neuromas and metatarsalgia of both feet and chronic obstructive pulmonary

disease."  R. at 12.  The ALJ stated that the "impairments significantly limit [Plaintiff's]

ability to perform basic work activities, as required by SSR 85-28."  Id.

     Moreover, the ALJ determined that "[t]he record does not support a finding of

additional 'severe' impairments."  R. at 12.  The ALJ found that, while Plaintiff "has a

history of cerebral aneurysms[,] . . . this has not been a 'severe' impairment since the

application date."[1]  Id.  The ALJ noted that "digital angiography did not show any

residual or recurrent aneurysms" and that Plaintiff "reported that she had headaches,

but they resolved."  Id. at 12–13.  The ALJ also noted that "[a] December 2020 MRA

showed no evidence of recurrent or growing aneurysms" and that Plaintiff's

"neurological examination was normal and nonfocal, and she was doing well clinically."

Id. at 13.  Furthermore, the ALJ stated that Plaintiff's "medically determinable mental

impairments of depressive disorder and cocaine use disorder, considered singly and in

combination, do not cause more than a minimal limitation on [Plaintiff's] ability to

perform basic mental work activities and are therefore not 'severe.'"  R. at 13.

     Specific to his Step Two findings, the ALJ indicated that he "considered the broad

areas of mental function set out in the disability regulations for evaluating mental

disorders and in the Listing of Impairments (20 CFR Part 404, Subpart P, Appendix 1).

These four broad functional areas are known as the 'paragraph B' criteria."  R. at 13.

     The first functional area discussed includes "understanding, remembering, or

applying information."  R. at 13.  The ALJ determined that Plaintiff had "a mild

limitation."  Id.  For example, "[i]n written statements, [Plaintiff] indicated that she has

---

[1] For instance, the ALJ noted that "[i]n 2009, [Plaintiff] had a subarachnoid hemorrhage
from a ruptured ACA aneurysm," and that, in 2010, "[m]ultiple intracranial unruptured
aneurysms were found and treated[.]"  R. at 12.

trouble remembering things like appointments, names, and dates." Id. But the ALJ

noted that Plaintiff's "recent and remote memory skills have been intact on examination"

and that "[h]er intellectual functioning is estimated to be average, with an appropriate

general fund of information." Id. Finally, the ALJ noted that Plaintiff "reported that she

reads and plays video games, which demonstrates an ability to understand, remember,

and apply information." Id.

The second functional area discussed includes "interacting with others." R. at

13. Again, the ALJ found only "a mild limitation." Id. Specifically, the ALJ found that

Plaintiff "indicated that she does not have problems getting along with family, friends,

neighbors, bosses, police, landlords, or other people in authority, and has not lost a job

due to problems getting along with others." Id. The ALJ noted that, during her

consultative examination, Plaintiff was "cooperative, with an adequate manner of

relating and appropriate eye contact" and normal "motor behavior and posture." Id.

Additionally, Plaintiff "reported spending time with her best friend, having a partner, and

taking a friend to radiation treatment." Id.

As to the third functional area, which includes "concentrating, persisting, or

maintaining pace," the ALJ found that Plaintiff has "a mild limitation." R. at 13. The ALJ

determined that, although Plaintiff "testified that she has a hard time paying attention

because her mind wanders[,] . . . on examination, her attention and concentration were

intact, and her thought processes were coherent and goal directed, with no evidence of

hallucinations, delusions, or paranoia." Id. Moreover, the ALJ stated that, during

Plaintiff's counseling sessions, "her attention and concentration have been good." Id.

Furthermore, the ALJ noted that Plaintiff "reported that she cooks, reads, and plays

video games, which shows an ability to concentrate, persist, and maintain pace." Id. at 13.

As to the fourth and final functional area, which includes "adapting or managing oneself," the ALJ again found "a mild limitation." R. at 13. The ALJ stated that Plaintiff "indicated that she is able to pay bills, count change, and handle a savings account" and that "stress can maker her feel overwhelmed and want to stay in her room." Id. at 13–14. However, the ALJ also noted that Plaintiff "stated that she dresses, bathes, and grooms herself, and she has been described as appropriately dressed and well groomed." Id. at 14. The ALJ determined that Plaintiff "has managed her mental health symptoms without hospitalization" and that Plaintiff also "took care of an elderly man during the period at issue." Id.

In concluding the functional area analysis, the ALJ stated that he "considered all of [Plaintiff's] medically determinable impairments, including those that are not 'severe,' when assessing [Plaintiff's] residual functional capacity." R. at 14. The ALJ also noted that, although Plaintiff "stated that she has chronic fatigue syndrome when describing her medical history to treatment providers," such alleged impairment "has been established as a medically determinable impairment under the standards in Social Security Ruling." Id. In sum, the ALJ concluded that "[b]ecause [Plaintiff's] medically determinable mental impairments cause no more than a 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a

minimal limitation in [Plaintiff's] ability to do basic work-related mental activities,

[Plaintiff's] mental impairments are not 'severe.'" Id.

At Step Three, the ALJ concluded that Plaintiff "does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the

listed impairments in CFR Part 404, Subpart P, Appendix 1." R. at 14. On review, the

ALJ stated that he "carefully considered the listing that most closely related to

[Plaintiff's] 'severe' impairments, including the musculoskeletal disorder listings in

section 1.00 of Appendix 1 and listing 3.02 for chronic respiratory disorders." Id.

As to the musculoskeletal listings, the ALJ determined that "the record does not

establish one of the requisite impairment-related physical limitations of musculoskeletal

functioning that has lasted, or is expected to last, for a continuous period of at least 12

months[.]" R. at 14. The ALJ stated that there was no medical documentation of the

following: "[a] documented medical need for a walker, bilateral canes, or bilateral

crutches, or a wheeled and seated mobility device involving the use of both hands[.]"

Id. Similarly, the ALJ found insufficient documentation for "[a]n inability to use one

upper extremity to independently initiate, sustain, and complete work-related activities

involving fine and gross movements" or "for a one-handed, hand-held assistive device

that requires the use of the other upper extremity or a wheeled and seated mobility

device involving the use of one hand." Id. Furthermore, the ALJ found insufficient

documentation supporting "[a]n inability to use both upper extremities to the extent that

neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements." R. at 14.

As to Plaintiff's respiratory functioning, the ALJ found that Plaintiff "has not had the requisite exacerbations of respiratory functioning requiring three hospitalizations within 12 months" and that "she has not had the required FEV1, FVC, DLCO, PaO2, PaCO2, or pulse oximetry SpO2 levels." Id.

At Step Four, the ALJ found that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a)." R. at 15. However, the ALJ noted exceptions insofar as Plaintiff "can climb ramps or stairs no more than frequently, can climb ladders, ropes, or scaffolds no more than occasionally, can kneel or crawl no more than frequently, and must avoid exposure to concentrated dust, odors, fumes, or gases." Id. The ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SS 16-3p[,]" in addition to "the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c." Id.

The ALJ stated that he followed "a two-step process" in making the Step 4 determination. R. at 15. First, the ALJ indicated "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce [Plaintiff's] pain or other symptoms." Id. Second, the ALJ stated that, if such an impairment is shown, then his determination "must evaluate the

intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] ability to perform work-related activities."  Id.

More specifically, the ALJ noted that Plaintiff "testified that she has chronic fatigue, which causes her to have joint pain, get sick often, and lack focus" and that she "has a difficult time going up inclines or stairs due to her COPD."  R. at 15. Furthermore, the ALJ indicated that Plaintiff "stated that she has pain and weakness from arthritis and has problems with her feet" and that she "is able to lift only five to 10 pounds, sit for only half an hour to one hour, and stand and/or walk for only 15 minutes." Id.  Plaintiff testified that, due to her 2009 brain aneurysm rupture, "she has to stay out of high stress situations to prevent her blood pressure from going up."  Id.  The ALJ further noted that Plaintiff "has hypothyroidism, which causes fatigue and weight gain" and that "[m]entally, she has anxiety and posttraumatic stress disorder, which makes dealing with people difficult and as a result, she left her last job."  Id.

Notably, while the ALJ found that Plaintiff "has medically determinable impairments that can reasonably be expected to cause the symptoms she described during her testimony[,]" he concluded that "the evidence does not support [Plaintiff's] allegations regarding the extent of the functional limitations caused by her symptoms." R. at 15.  For instance, the ALJ discussed Plaintiff's substance abuse and mental health treatment records, and found that they are "dominated by discussion of [Plaintiff's] efforts to maintain sobriety and be drug free, and every indication is that these efforts have been successful."  Id.  Furthermore, the ALJ stated that the records "do not contain longitudinal medical status examination findings, with the exception of records from April and May 2021," and that the latter findings "are generally unremarkable."  Id.

at 15–16.   In referencing several specific examples in the record, the ALJ concluded that "[t]he treatment records indicate that [Plaintiff] functions at a high level and maintains the ability to perform routine activities of daily living and interact appropriately with other people."  Id. at 16–18.

Finally, at Step Five, the ALJ determined that Plaintiff "is capable of performing her past relevant work as a medical receptionist."  R. at 18.  The ALJ stated that "[t]he record shows that [Plaintiff] worked as a medical receptionist from July 2012 to May 2013" and that "[h]er earnings from this job represent substantial gainful activity."  Id. The ALJ noted that "[t]he vocational expert testified that this job is defined in the Dictionary of Occupational Titles (DOT) as the occupation of medical receptionist" and "has a specific vocational preparation level of 4."  Id.  The ALJ noted that such occupation "can be learned when it is done for 3 to 6 months."  Id.  In comparing Plaintiff's "residual functional capacity with the physical and mental demands" of receptionist work, the ALJ determined that Plaintiff "is able to perform it as it is generally performed in the national economy."  Id.  The ALJ cited the Dictionary of Occupational Titles in stating that "this occupation is generally performed at the sedentary exertional level in the national economy, and does not require any postural activities or environmental exposures precluded by [Plaintiff's] residual functional capacity."  Id.

In sum, the ALJ concluded that Plaintiff has not been under a disability since January 28, 2020, the date of her application for benefits.

## IV.    STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries.  See 42 U.S.C. § 405(g).  First, the Court determines whether the

9

Commissioner applied the correct legal standards.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y. Jul. 16, 1997) (Pooler, J.) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record.  See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 686 F.2d 60, 62 (2d Cir. 1982).  A Commissioner's finding will be deemed conclusive if supported by substantial evidence.  See 42 U.S.C. § 405

In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations.  See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997) (citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).  Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'"  Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990) (quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

For claims made after March 27, 2017, as is the case here, the ALJ is to consider

any relevant opinion evidence pursuant to the rule stated in 20 C.F.R. § 404.1520c. Pursuant to that regulation, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding[s], including those from your medical sources."  20 C.F.R. 404.1520c(a).

The Administration applies the factors set forth in 20 C.F.R. § 404.1520c(c)(1)-(c)(5) in evaluating such opinions.  Id.  Such factors consider the medical opinion's:  (1) "supportability"; (2) "consistency"; (3) the author's "relationship with the claimant," including the "length of the treatment relationship," "frequency of examinations," "purpose of the treatment relationship," "extent of the treatment relationship," and whether the opinion author examined the claimant; (4) the "[s]pecialization" of the opinion author; and (5) other relevant factors, such as the author's familiarity with the underlying evidence or the rules of the disability program.  20 C.F.R. § 404.1520c(c)(1)-(c)(5).  The Administration also considers "whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical findings makes the opinion or prior administrative medical finding mor or less persuasive."  20 C.F.R. § 404.1520c(c)(5).

The new rules "made the [earlier] 'treating physician rule' inapplicable to disability claims filed after March 27, 2017, and gave the ALJ and Commissioner more flexibility in weighing medical opinions on record."  Skartados v. Comm'r of Soc. Sec., No. 20-cv-3903, 2022 U.S. Dist. LEXIS at *24 n.9 (E.D.N.Y. Feb. 10, 2022).  For such claims, "no particular deference or special weight is given to the opinion of the treating physician," and the Administration "will articulate in our determination or decision how persuasive

we find all of the medical opinions." <u>Quiles v. Saul</u>, No. 19-cv-11181, 2021 U.S. Dist.

LEXIS 41725 at *27 (S.D.N.Y. Mar. 5, 2021) (quoting 20 CFR §§ 4040.1520c(b),

416.920c(b)).  In offering this evaluation, "the ALJ must 'explain,' in all cases, 'how [he

or she] considered' both the supportability and consistency factors, as they are 'the

most important factors.'" <u>Segarra v. Comm'r of Soc. Sec.</u>, No. 20-cv-5801, 2022 U.S.

Dist. LEXIS 29171 at *27 (S.D.N.Y. Feb. 17, 2022) (quoting 20 CFR § 404.1520c(b)(2)).

In addition, "the ALJ is required to consider, but need not explicitly discuss, the three

remaining factors (i.e., relationship with the claimant, specialization, and 'other')" when

evaluating the medical opinions.  <u>Velasquez v. Kijakazi</u>, No. 19-cv-9303, 2021 U.S. Dist.

LEXIS 183349 at *59 (S.D.N.Y. Sept. 24, 2021).  If the ALJ finds "two or more medical

opinions . . . equally supported and consistent with the record, but not exactly the same,

the ALJ must articulate how he or she considered those three remaining factors." <u>Id.</u>

"[T]he nature of an ALJ's inquiry in disability factfinding turns on the substance of the

medical opinion at issue—not its form—and ultimately whether there is reasonable

evidence in the record that supports the conclusions drawn by the medical expert[.]"

<u>Colgran v. Kijakazi</u>, 222 F.3d 353, 2022 U.S. App. LEXIS 53, at *14 (2d Cir. 2022).

**V.    ANALYSIS**

Plaintiff contends generally that the ALJ's decision is unsupported by substantial

evidence and otherwise improperly decided.  More specifically, Plaintiff contends that

(1) "[t]he ALJ's Step Two determination is not supported by substantial evidence where

the ALJ failed to properly consider Plaintiff's mental limitations as a severe impairment;

an error that permeated the remainder of his analysis"; (2) "[t]he ALJ's RFC

determination is not supported by substantial evidence and is the product of legal error

because he failed to properly evidence and is the product of legal error because he failed to properly evaluate the opinions of record"; and (3) "[t]he ALJ failed to reconcile his paragraph 'B' findings with Plaintiff's RFC."  dkt. # 12.  The Court will address each argument in turn.

### A.    Plaintiff's Mental Limitations

Plaintiff contends that, at the Step Two stage, although "the ALJ determined that Plaintiff had the severe impairments of neuromas and metatarsalgia of both feet and chronic obstructive pulmonary disease[,]" he erred by "fail[ing] to properly consider Plaintiff's mental impairments."  Plaintiff asserts that the ALJ failed to consider both her severe and non-severe mental impairments in determining her residual functional capacity.   Plaintiff claims that the record indicates she "suffered from long-standing mental impairments that have persisted prior to and throughout the relevant period."  By way of example, Plaintiff asserts that she "received care at MHCOC during which time her history of brain aneurism, substance use, and mental impairments were noted along with mental status examinations that variously revealed poor to fair insight and judgment, an irritable mood, an anxious mood, and a depressed mood."

Furthermore, following her incarceration at Farnham Family Services, Plaintiff "was noted for a history of substance use disorder."  Plaintiff states that, *inter alia*, she "reported a history of trauma and self isolation in her house," "fear regarding the pandemic," "anxiety regarding her stressors," "chronic fatigue," and frustrations with various life stressors, including relationships, work, and living situations.  Plaintiff identifies recent medical appointments in the record where her mood was described as "anxious."

13

In opposition, the Commissioner argues generally that "Plaintiff did not meet her burden to establish a severe medically determinable mental impairment." dkt. #14. The Commissioner asserts that "the ALJ determined that Plaintiff had medically determinable mental impairments of depressive disorder and cocaine use disorder." However, The Commissioner asserts that, the ALJ "then rated the degree of functional limitation," and determined that Plaintiff had only "a mild limitation" in each of the four areas. In concluding as much, The Commissioner asserts that "the ALJ reasonably relied" on "objective findings" within the record. In any event, The Commissioner argues that any purported failure to find a specific impairment at Step Two is harmless considering that the ALJ found other severe impairments.

Herein, the Court finds that the ALJ's Step Two determination is supported by substantial evidence. As an initial matter, the record reveals that the ALJ found multiple severe physical impairments. R. at 12. Moreover, the ALJ properly rejected Plaintiff's contentions that she suffered from additional severe mental impairments upon conducting the requisite "special technique" as set forth in 20 C.F.R. §§ 404.1520a(b)-€, 416.920a(b)-(e). Id. at 12–14. Relative to each factor, the ALJ provided a detailed explanation by reference to the record evidence, including, *inter alia*, Plaintiff's self-reported symptoms and limitations, her medical examination reports, and her general history and overall treatment progression. Id. The ALJ's explicit statement indicating that he "considered all of [Plaintiff's] medically determinable impairments, including those that are not 'severe,' when assessing [Plaintiff's] residual functional capacity," is reflective of his detailed analysis. Id. at 14.

More specifically, the ALJ found medically determinable mental impairments,

including depressive disorder and cocaine use disorder.  R. at 13.  The ALJ noted, *inter alia*, the degrees of resulting functional limitations based on the record evidence—to wit: the testimony as to Plaintiff's trouble remembering appointments, names, and dates compared to "her recent and remote memory skills" on examination; her self-reported ability to follow written or spoken instructions, read, and play games.  *Id.*  The ALJ further referenced Plaintiff's lack of "problems getting along with family, friends, neighbors, bosses, police, landlords, or other people in authority," and her employment prospects, and her "cooperative" and "adequate manner of relating" at the consultative examination.  *Id.*  The ALJ noted, *inter alia*, Plaintiff's generally intact attention and concentration on examination, positive counseling sessions, and self-reported activities evincing her ability to concentrate, persist, and maintain pace.  *See id.*  Finally, the ALJ relied on Plaintiff's self-reported abilities "to pay bills, count change, and handle a savings account," as well as being able to dress and groom herself appropriately, manage her own mental health symptoms, and take care of others.  *See id.* at 13-14.

In sum, relative to the ALJ's analysis of Plaintiff's mental limitations, the Court finds that the determination was supported by substantial evidence.

**B.    The ALJ's Residual Functioning Capacity Determination**

Next, Plaintiff argues that "the ALJ's RFC is the product of legal error where the ALJ failed to properly evaluate the opinions of consultative examiner, Corey Anne Grassl, Psy.D; LMHC, Tiffany Gentile; and CASAC, Suzanne Campbell."  Dkt. # 12. Plaintiff asserts that the ALJ failed to properly explain how he considered the supportability and consistency of medical opinions in the record.[2]

---

[2] Additionally, Plaintiff reasserts that the ALJ's purported failure to consider her mental

The Commissioner argues that "substantial evidence supports the [ALJ's] evaluation of the prior administrative medical findings and medical opinion evidence." Dkt. # 14.  The Commissioner asserts that "while Plaintiff challenges the ALJ's evaluation of other medical opinion evidence, she does not challenge the ALJ's evaluation of the prior administrative medical findings[,]" which included "findings by state agency psychological consultants Dr. D'Ortona and Dr. Liber-Diaz."  As to Dr. Grassl, the consultative examiner, the Commissioner contends that "Dr. Grassl did not explain the basis for her opinion as to moderate limitations beyond noting 'difficulties are caused by psychiatric problems.'"  Furthermore, Defendant contends that the opinions of Plaintiff's medical sources, LMHC Gentile and CASAC Campbell, may also be "consistent with a finding of only mild limitations."  In any event, the Commssioner contends that "the ALJ properly addressed both the supportability and consistency of these medical opinions[.]"

1.  Consultative Examiner Dr. Grassl

The ALJ considered the medical source statement from Dr. Grassl, which concluded that Plaintiff suffers from "unspecified depressive disorder," "posttraumatic stress disorder," "generalized anxiety disorder," and "polysubstance use disorder in sustained remission."  R. at 755.  The ALJ acknowledged that "Dr. Grassl concluded that [Plaintiff] has moderate limitations in certain aspects of work-related mental activity[.]"[3]  R. at 17.  However, the ALJ found that "[m]oderate mental limitations are not

---

limitations "corrupted" the RFC analysis.  However, considering that the Court has rejected this contention, as discussed, supra, further discussion herein is unnecessary.
[3] The Court further notes that Dr. Grassl's written evaluation states that Plaintiff's "[p]rognosis is fair given engagement in treatment."  R. at 755.

supported by Dr. Grassl's mental status examination findings, and they are inconsistent with the mental capacity evidenced by [Plaintiff's] ability to carry out [] various activities[.]"  R. at 15–17.  More specifically, the ALJ referenced matters discussed throughout his decision, which included, *inter alia*, Plaintiff's: "average" intellectual functioning; ability "to follow written or spoken instructions"; positive relationships with family, friends, and community figures; and "coherent and goal directed" thought processes; and "good" attention and concentration at counseling sessions.  R. at 12–18.

In sum, the ALJ adequately discussed the supportability and consistency factors and cited substantial evidence for rejecting the moderate limitations found by Dr. Grassl.

2.  Psychological Consultants LMHC Gentile and CASAC Campbell

The ALJ found that "[t]he assessments with disabling mental limitations provided by Tiffany Gentile, LMHC [] and Suzanne Campbell [] are unpersuasive."  R. at 18.  The ALJ reasoned that "[n]either of these assessments is well supported by reference to mental status examination findings that are actually documented in the underlying treatment records.  Moreover, the limitations in these assessments are inconsistent with the mental capacity evidenced by [Plaintiff's] activities during the relevant period at issue[.]"  Id.  The ALJ noted that "[t]he record also indicates that Ms. Gentile's assessment may have been completed with input from [Plaintiff] herself."  Id.  In this regard, any contention that the ALJ did not explain the supportability and consistency factors is without merit.

Accordingly, relative to the opinions of LMHC Gentile and CASAC Campbell, the Court finds that the ALJ applied the correct legal standard and his analysis was supported by substantial evidence.

### C.    The ALJ's Paragraph "B" Analysis

Finally, Plaintiff contends that "[t]he ALJ failed to reconcile his paragraph 'B' findings with Plaintiff's RFC."  Specifically, Plaintiff asserts that, despite "determin[ing] that Plaintiff had mild limitations in all four of the Paragraph 'B' domains[,] . . . the ALJ's RFC determination does not provide for a single mental limitation, nor does the ALJ explain why additional limitations were not warranted."  Plaintiff states that "the ALJ's discussion of the evidence thereafter is limited to a rejection of all mental impairments due to unremarkable mental status examination findings and Plaintiff's meager daily activities."  Plaintiff notes that her "treating sources and the agency's consultative examiner each concluded that Plaintiff's impairments were severe enough to necessitate moderate to extreme limitations in various areas of functioning."

In response, the Commissioner asserts generally that the ALJ "supportably determined that Plaintiff's mild limitations did not require any mental limitations in the residual functional capacity assessment" and that Plaintiff "has not satisfied her burden to establish greater limitations" or lack of substantial evidence.  dkt. # 14.

18

As discussed previously, the Court finds that the ALJ did not err in finding that Plaintiff does not suffer from a severe mental limitation.  The ALJ determined that "[t]he record does not support a finding of additional 'severe' impairments" before providing a series of detailed explanations supported by record evidence.  R. at 12–14.  To the extent Petitioner contends that mild limitations must be incorporated into the ALJ's RFC analysis, the Court is not persuaded that such explicit reference is necessary.  *See Michelle B. v. Comm'r of Soc. Sec.*, No. 20-CV-0332 (DNH), 2021 WL 3022036, at *7-8 (N.D.N.Y. Jul. 16, 2021) (citations omitted).  In any event, read as a whole, the ALJ did reference Plaintiff's mild limitations relative to the residual functional capacity analysis, as discussed, supra.

The Court therefore finds that substantial evidence supports the ALJ's analysis of the medical opinions in this matter and the ALJ's ultimate conclusion that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.

## V.   CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings, dkt. # 12, is hereby DENIED.  Defendant's motion for judgment on the pleadings, dkt. # 14, is hereby GRANTED.  The Clerk of the Court is directed to enter judgment for the Commissioner and close the case.

**IT IS SO ORDERED.**

Dated: September 5, 2023

Thomas J. McAvoy
Senior, U.S. District Judge

19